BEECHWOOD ACRES, INC. *vs.* TOWN OF HAMILTON.

Essex.     April 6, 1966. — April 29, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Validity, Zone boundary.   *Land Court,* Appeal, Proceeding as to zoning.

A proceeding in the Land Court under G. L. c. 185, § 1 (j½), and c. 240, § 14A, to determine the validity of a town's zoning by-law as applied to the petitioner's land is on the law side of the court.   [658]

An appeal from a decision of the Land Court in a proceeding under G. L. c. 185, § 1 (j½), and c. 240, § 14A, to determine the validity of a town's zoning by-law as applied to the petitioner's land is, under c. 185, § 15; c. 231, § 96, too late if not claimed within twenty days after the decision. [657–658]

On an appeal under G. L. c. 185, § 15; c. 231, § 96, from the decision of the Land Court in a proceeding under c. 185, § 1 (j½), and c. 240, § 14A, to determine the validity of a town's zoning by-law as applied to the petitioner's land, the only question open in this court is whether the decision is correct in law on the facts found by the judge.   [658]

A certain boundary between two zoning districts in a town, not defined otherwise than as shown on the zoning map incorporated in the zoning by-law, was shown on the map with sufficient definiteness to permit a determination of its location in relation to a parcel of land, and did not render the by-law invalid for vagueness as applied to the parcel.   [658–659]

PETITION filed in the Land Court on September 25, 1964.

The case was heard by *McPartlin,* J.

*Nicholas J. DeCoulos* for the petitioner.

*Jerome M. Leonard* for the respondent.

CUTTER, J.   The petitioner (Beechwood) seeks under G. L. c. 185, § 1 (j½), and c. 240, § 14A (inserted, respectively, by St. 1934, c. 263, §§ 1 and 2), to obtain a declaration that Hamilton's zoning by-law was unconstitutionally vague as it applied to Beechwood's land (the locus) east of Main Street (apparently sometimes called Bay Road) near its junction with Rock Maple Avenue.   The by-law incorporated by reference a zoning map, but neither the by-law nor the map set out the zone boundaries by courses or distances except as these could be determined from the map.

The boundary between a residence A district (with a minimum lot area of 20,000 square feet) and a residence B district (with a minimum lot area of 40,000 square feet), as shown on the map, runs east a few hundred feet from Main Street, then south a short distance, then east again to Miles River. Beechwood filed with the town planning board a preliminary subdivision plan of the locus upon the assumption that the locus is in the A district. After investigation, the town engineer reported to the planning board that the locus, except for a small triangular piece of the southwest corner, is in the B district.

The zone "boundary lines in great part run through open areas or wooded land." The locus is a wooded area of approximately seventeen acres. The surrounding area is wooded and swampy. The town is a "general rural community with few real estate developments," although one of these, established in 1952 before the zoning by-law was passed (1954), adjoins the locus at or near the zone boundary east of Main Street. Indeed, one exhibit strongly suggests that the zone boundary may have been set in 1954 so as to include the 1952 development (but not most of the locus) in the A zone, for the zone boundary line near Main Street is shown on the exhibit as following the northerly boundary and the north part of the easterly boundary of the 1952 development. Because of the town engineer's report, the planning board rejected Beechwood's definitive subdivision plan.

The Land Court judge found that "the division line between" the A district and the B district "on the zoning map . . . was shown with sufficient definiteness . . . to enable . . . [Beechwood] to determine its location as to . . . [its] land." He ruled that the zoning by-law and map were valid and "in full effect as to" the locus. He ordered the entry of a decree in accordance with his decision dated June 16, 1965. A "final decree" accordingly was entered (on Beechwood's motion) on July 26, 1965. Beechwood claimed an appeal on August 11, 1965, sixteen days after the date of the so called "final decree," but fifty-six days after the decision.

1.  The town contends that Beechwood's appeal was too late because not claimed within twenty days of the judge's decision. See G. L. c. 185, § 15, which provides, in part, "Questions of law arising in the land court on any decision or decree may be taken by any party aggrieved directly to the supreme judicial court for revision in the same manner in which questions of law are taken to that court from the superior court." General Laws (Ter. Ed.) c. 231, § 96, provides for appeals from certain orders in the Superior Court.[1] General Laws c. 185, § 1, lists in par. (j½) petitions under G. L. c. 240, § 14A, "to determine the validity and extent of municipal zoning . . . by-laws" in the same group with other matters, such as par. (a) land registration, par. (b) proceedings in respect of tax titles, and par. (e) petitions to determine the validity of encumbrances under G. L. c. 240, §§ 11–14. The two types of litigation last mentioned (although they may seem in some aspects like equitable proceedings) have hitherto been treated as proceedings at law. See *Crocker* v. *Cotting,* 173 Mass. 68, 69, and *American Unitarian Assn.* v. *Minot,* 185 Mass. 589, 590 (dealing with R. L. c. 182, § 11, prior to the transfer by St. 1904, c. 448, § 1, of jurisdiction under the section to the Land Court). See also *Norwood* v. *Norwood. Civic Assn.* 340 Mass. 518, 522 (tax title foreclosure). It is to be noted that pars. (a) to (j½), inclusive, of c. 185, § 1, are separately grouped in the statute from proceedings under the Land Court's equity jurisdiction.

The present petition is entitled "[b]ill of [c]omplaint" and is phrased in the form of a bill in equity. It expressly states, however, that Beechwood "invokes the provisions of" G. L. c. 185, § 1 (j½), and c. 240, § 14A, both enacted by St. 1934, c. 263, §§ 1 and 2 (see 1934 House Bills Nos. 855, 1492), some years prior to St. 1945, c. 582, § 1, by which

---

[1] Section 96 reads, in part, "A party aggrieved by any order of the superior court sustaining or overruling a demurrer . . . or a party aggrieved by an order for judgment upon a case stated, or by any order decisive of the case founded upon matter of law apparent on the record in any proceeding, may appeal therefrom to the supreme judicial court . . . . An appeal from an order of the superior court shall be claimed within twenty days after it is made . . . ."

G. L. c. 231A came into existence. Although the facts alleged and found may sufficiently show the existence of a controversy, the petitioner makes no explicit reference to declaratory relief under G. L. c. 231A, and gives no clear or adequate indication that it seeks any relief in equity (as opposed to relief under § 1 [j½]), declaratory or other-wise. Beechwood does state that it has no adequate remedy at law.

We hold that proceedings based solely on c. 185, § 1 (j½), are on the law side of the Land Court and review of them is to be governed by c. 185, § 15, and related statutes. In Land Court proceedings, if declaratory or other relief in equity is being sought (see e.g. *Kershaw* v. *Zecchini,* 342 Mass. 318), that should be made plain by appropriate pleadings. We take Beechwood at its word in determining the nature of the petition filed by it. In the hope, however, that we may assist in avoiding possible further litigation, we discuss briefly the merits of this case, which has been fully argued. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731.

2. Because the case would be before us on appeal and not by bill of exceptions, our review would be confined to the pleadings and the judge's decision even if the appeal had been seasonably claimed. See e.g. *Cerel* v. *Framingham,* 342 Mass. 17, 18; *Comeau* v. *Manzelli,* 344 Mass. 375, 376. The decision incorporates the exhibits by reference. We need consider only whether the decision is correct in law upon the facts found by the judge. See *Harrington* v. *Anderson,* 316 Mass. 187, 192; *Ide* v. *Bowden,* 342 Mass. 22, 24. Cf. cases before us upon bills of exceptions, *Pitman* v. *Medford,* 312 Mass. 618, 619; *Aronson* v. *Sharon,* 346 Mass. 598.

A definition of the zone boundary by metes and bounds would have been more satisfactory than merely showing it upon the zoning maps included among the exhibits. See *Maki* v. *Yarmouth,* 340 Mass. 207, 211. Use of small scale maps, without very precise definition of zone boundaries in the by-law itself, obviously is likely to lead to misunder-

standing and controversy. Examination of the judge's findings and the exhibits, however, convinces us that the judge was warranted in concluding in effect that the zoning map was sufficiently specific and that, from the map, the location of the zone boundary in relation to fixed points shown on the map (such as the intersection of Main Street and Rock Maple Avenue) could be determined with reasonable accuracy.

*Appeal dismissed.*